IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 06-cv-01937-LTB-CBS

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

DOROTHY BARRETT-TAYLOR,

    Plaintiff-Intervenor,

v.

NATIONAL JEWISH MEDICAL AND RESEARCH CENTER,

    Defendant.
_____

## ORDER
_____

This case is before me on Dorothy Barrett-Taylor's ("Barrett-Taylor") Application for Intervention [Doc # 9]. After consideration of the application, related pleadings, and the case file, I grant the motion as set forth below.

**I. Background**

In this action, Plaintiff Equal Employment Opportunity Commission ("EEOC") alleges that Defendant National Jewish Medical and Research Center ("National Jewish") discriminated against Barrett-Taylor in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a). Specifically, the EEOC's Complaint sets forth one claim for relief wherein it alleges that National Jewish violated the ADA by wrongfully denying Barrett-Taylor employment based on a perceived disability, active tuberculosis ("TB").

The EEOC's ADA claim arises out of Barrett-Taylor's acceptance of National Jewish's offer of employment to her. Following this acceptance and prior to beginning work at National Jewish, Barrett-Taylor completed a health screening questionnaire wherein she disclosed that she had previously received a positive result to a skin test for TB. Barrett-Taylor then purportedly undertook efforts to demonstrate to National Jewish that she did not have active, contagious TB. During this process, Barrett-Taylor, an African American, was allegedly told by a National Jewish employee that "you people" are always looking for "free health care." Ultimately, National Jewish withdrew its offer of employment to Barrett-Taylor.

Based on these events, Barrett-Taylor seeks to intervene in this case to assert claims against National Jewish for (1) employment discrimination under the ADA; (2) failure to reasonably accommodate under the ADA; and (3) discrimination in violation of 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991.

## II. Analysis

As a preliminary matter, I note that the EEOC has no objection to Barrett-Taylor intervening in this action to assert all of her discrimination claims against National Jewish. I further note that National Jewish has no objection to Barrett-Taylor intervening in this action to assert her claim for employment discrimination under the ADA, but does object to her intervention for purposes of asserting her claims for failure to reasonably accommodate under the ADA and for race discrimination under § 1981. Accordingly, I will limit my analysis to whether Barret-Taylor is entitled to assert her claims for failure to reasonably accommodate her perceived disability and race discrimination in this case.

**A. Barrett-Taylor's Claim for Failure to Reasonably Accommodate under the ADA**

The ADA expressly authorizes an aggrieved party to intervene in a civil action brought by the EEOC. 42 U.S.C. §§ 12117(a) & 2000e-5(f)(1). Nonetheless, National Jewish first argues that Barrett-Taylor should not be permitted to assert her claim for failure to reasonably accommodate her under the ADA because this claim is not timely. In support of this argument, National Jewish relies on a right-to-sue letter that the EEOC issued to Barrett-Taylor on March 25, 2005 and contends that since Barrett-Taylor failed to assert this claim in an ADA suit within 90 days of the issuance of this letter she should not be permitted to do so now. I disagree.

Within the 90 day period following the issuance of the right-to-sue letter, the EEOC issued a notice of intent to reconsider its position and expressly revoked Barrett-Taylor's right to sue on her ADA claim. Under these circumstances, it cannot be said that Barrett-Taylor failed to timely assert her claim for failure to reasonably accommodate under the ADA by not commencing suit before the expiration of the 90 day period.

National Jewish further argues that Barrett-Taylor should not be permitted to assert her claim for failure to reasonably accommodate because this claim was not raised in her charge of discrimination or encompassed within the EEOC's Complaint. Again, I disagree.

A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow from the charge of discrimination submitted to the EEOC. *MacKenzie v. City & County of Denver,* 414 F.3d 1266, 1274 (10th Cir. 2005). Moreover, complaints to the EEOC must be liberally construed to accomplish the purposes of the ADA. *Romero v. Union Pacific Railroad,* 615 F.2d 1303, 1311 (10th Cir. 1980). Thus, a plaintiff's claims in a discrimination suit may be somewhat broader than that specifically

set forth in the EEOC charge.

Here, Barrett-Taylor's original discrimination charge was predicated on her belief that she was discriminated against and her offer of employment rescinded "because of [her] record of disability and because [she] was perceived to be disabled." Barrett-Taylor's attorney subsequently advised the EEOC of her position that National Jewish failed to reasonably accommodate her by giving her additional time to obtain sufficient medical clearance or offering her an alternative position. Under these circumstances, I conclude that an inquiry by the EEOC into whether National Jewish failed to reasonably accommodate Barrett-Taylor would likely have flowed from her claim that National Jewish discriminated against her based on a perceived disability when it rescinded her offer of employment. This conclusion is further supported by the broad relief that the EEOC seeks by its Complaint. In particular, the EEOC requests an injunction enjoining National Jewish from engaging in any employment practice which discriminates on the basis of disability.

Accordingly, pursuant to Fed. R. Civ. P. 24(a) and 42 U.S.C. § 12117(a), Barrett-Taylor is entitled to intervene in this action for purposes of asserting a claim for failure to reasonably accommodate under the ADA against National Jewish.

**B. Barrett-Taylor's Claim for Race Discrimination under § 1981**

Barrett-Taylor's allegations of race discrimination against National Jewish under 42 U.S.C. § 1981 were not included in the charge that she filed with the EEOC or in the complaint that the EEOC filed in this case. Although National Jewish concedes that the inclusion of these allegations in the EEOC charge is not a prerequisite to Barrett-Taylor's pursuit of this claim, it argues that this claim is nonetheless precluded because it is untimely. I disagree, but limit this

4

conclusion to the context of Barrett-Taylor's application for intervention.

In arguing that Barrett-Taylor's claim for race discrimination is untimely, National Jewish asserts that this claim is subject to Colorado's residual two-year statute of limitations. *See Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1110 (10th Cir. 1998) (applying C.R.S. § 13-80-101(1)(i) to § 1981 claim). National Jewish concedes, however, that if Barrett-Taylor's race discrimination claim arises out of the 1991 amendments to § 1981, then it is subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. *See Harris v. Allstate Ins. Co.,* 300 F.3d 1183, (10th Cir. 2002) (Section 1658 applies to race discrimination claims arising out of 1991 amendments to § 1981). I must therefore determine whether this claim arises out of the amendments to § 1981.

In *Patterson v. McLean Credit Union,* 491 U.S. 164, 177 (1989) the Supreme Court held that the language in § 1981recognzing equal rights "to make and enforce contracts" did not cover conduct that occurred after the formation of a contract. The Civil Rights Act of 1991 then amended § 1981 to define the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Accordingly, the amendments to § 1981 essentially created a new cause of action to challenge discriminatory conduct occurring after the formation of a contract, and cases arising out of these amendments are therefore governed by the four-year statute of limitations set forth in 28 U.S.C. § 1658. *Harris*, *supra*, 300 F.3d at 1186-7. *See also* 28 U.S.C. § 1658(a) ("... a civil action arising under an Act of Congress enacted after the date of the enactment of this section [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues").

National Jewish characterizes Barrett-Taylor's race discrimination claim as one for failure to hire predicated on its refusal to enter into a contractual relationship with her. Under this characterization, Barrett Taylor's § 1981 claim would arise out of conduct occurring prior to the formation of a contract and be governed by the two-year statute of limitations set forth in C.R.S. § 13-80-101(1)(I). Barrett-Taylor contends, however, that her race discrimination claim is instead one for wrongful termination predicated on conduct by National Jewish that occurred after the formation of an employment contract with her. Under this characterization, Barrett-Taylor's § 1981 claim would be governed by the four-year statute of limitations set forth in 28 U.S.C. § 1658. I am unable to determine which of these characterizations is accurate based on the record before me, but accept that of Barrett-Taylor for the limited purpose of analyzing her right to intervene in this case to assert a claim for race discrimination under § 1981. Nothing in this Order shall, however, preclude National Jewish from challenging the timeliness of this claim by way of dispositive motion or otherwise at some later stage in these proceedings.

If it is assumed that the four-year statute of limitations set forth in 28 U.S.C. § 1658 is applicable to Barrett-Taylor's § 1981 claim, then this claim is timely. It is also readily apparent that this claim arises out of a common question of fact relating to the circumstances of her job offer from National Jewish as do her claims under the ADA. Accordingly, Barrett-Taylor has satisfied the requirements for permissive intervention under Fed. R. Civ. P. 24(b) and may intervene in this action for purposes of asserting for race discrimination under § 1981.

For the reasons set forth above, IT IS ORDERED that

1. Dorothy Barrett-Taylor's Application for Intervention [Doc # 9] is GRANTED; and

    2. Dorothy Barrett-Taylor's Complaint and Jury Trial Demand are hereby accepted for filing.

Dated: April __30__, 2007 in Denver, Colorado.

                                                  BY THE COURT:

                                                  s/Lewis T. Babcock
                                                  LEWIS T. BABCOCK, CHIEF JUDGE